IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:11cr530 |
| | ) | |
| WILLIAM LOUIS COLE, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The United States opposes the defendant's motion to suppress and request for a *Franks*

hearing.  The defendant moves to suppress the evidence seized from him at the time of his arrest

as well as the evidence later seized from his vehicle, cell phone, and storage locker pursuant to

validly issued search warrants.  Despite the defendant's arguments, law enforcement had a valid

basis to stop his vehicle given that the patrol officer observed that the defendant was not wearing

his seatbelt, which is an offense for which a driver can be stopped under Maryland law.

Moreover, the magistrates appropriately found that the affidavits in support of the search

warrants established probable cause.  The defendant fails to establish that the affiant submitted

any information she knew to be false or would have known was false but for a reckless disregard

for the truth, or that she omitted any information that would have defeated probable cause in this

case.

1

**THE FACTS**

**A.      The Bank Robbery**

On June 27, 2011, at 2:03 p.m., two robbers entered the BB&T Bank located at 8416

Arlington Boulevard, Fairfax, Virginia.  The first robber entered, approached the middle teller,

and stated that he needed to make a withdrawal.  The second robber, later identified as the

defendant, William Louis Cole, Jr., entered also brandishing a handgun.  Both men wore white

dust-type (or painter style) masks hiding the bottom portion of their face.   The defendant

pointed a handgun at the bank employees and ordered them to come into the lobby, to lie on the

floor, and to not hit the alarm.  The first robber then vaulted the teller's counter, pushed the teller

in the chest, opened the teller drawer, and grabbed cash from the drawer.  The first robber then

went to the teller at the drive thru window and demanded additional money.  Once the money

was obtained, both robbers exited the front door of the bank.  The robbers took $9,864.01.  The

robbery and the robbers were captured on surveillance video.  After leaving the bank, the robbers

fled in a Plymouth Voyager, which was found abandoned a short distance away and determined

to be a stolen vehicle.

**B.      Citizen Reports Seeing Defendant's Car Across from Bank Prior to Robbery**

Members of the Fairfax County Police Department and the Federal Bureau of

Investigation responded to the bank and began their investigation.  During that time, a citizen

approached officers and provided a license plate number that the citizen believed may be related

to the robbery.  This citizen stated that he worked at an office building near the bank.  The

citizen indicated that earlier in the day he had noticed a blue four-door BMW 740-IL model,

bearing Maryland license plates 5AE9468, parked in a parking lot across from the bank.  The

citizen had observed two African-American males just sitting in the vehicle earlier in the day and also again around 1:00 p.m.  The BMW was parked directly facing the bank, which is a stand-alone building.  At the time the citizen observed the individuals just sitting in the vehicle facing the bank, the citizen thought it was suspicious and wrote down the license plate number.  This was the tag number that he gave to police.

Fairfax County police officers ran the license plate provided.  The BMW was registered to a female relative of the defendant who resides in Landover Hills, Maryland.  FBI Special Agent Dennis Serna was present at the bank at this time.  Special Agent Serna is assigned to a squad that handles cases in both Virginia, Maryland, and the District of Columbia.  Special Agent Serna immediately recognized the woman's name, knew she was the defendant's sister, and knew that she had previously advised law enforcement that she had registered the defendant's BMW in her name but that he was the one who purchased and operated the vehicle.  Special Agent Serna also knew that the defendant was a suspect in an armed robbery attempt of a check cashing establishment which occurred on December 23, 2010, in Prince George's County, Maryland.  (In fact, the defendant had been arrested for that crime and was out on bond).

In that case, two suspects, one who was armed with a handgun, attempted to rob the check cashing establishment as an employee was entering the building.  The suspects fled prior to obtaining any money.  That victim observed the suspects enter a blue BMW and flee.  The victim obtained the license plate number.  The car was registered to the defendant's sister.  Subsequent investigation revealed that the BMW was actually owned and operated by the

3

defendant.  As stated, the defendant was subsequently arrested but later released on bond.[1]

After receiving this information, law enforcement investigating the Virginia bank robbery contacted the Prince George's County Police Department, who responded to the defendant's sister's address in Landover Hills, Maryland as well as another nearby address associated with the defendant.  At approximately 5:40 p.m.– just three hours after the Virginia bank robbery– the 1998 blue BMW 740-IL bearing Maryland tag number 5AE9468 arrived at the residence.  The defendant exited the vehicle and entered the residence.  Prince George's County Sergeant Dave Blazer, who was familiar with the defendant from another investigation, contacted the Landover Hills District Station of the Prince George's County Police Department and alerted them that they may need assistance.  Officer D. Lawrence, a patrol officer assigned to the Landover Hills district and who was also familiar with the defendant, responded to the area.

### C.      The Defendant's Stop and Subsequent Arrest

Approximately a half hour to one hour later, the defendant exited the residence and drove away in the BMW 740-IL.  Officer Lawrence pulled immediately behind the defendant; they were in the same traffic lane.  It was daylight and he could see into the defendant's car, which was an older model (1998) BMW.  Officer Lawrence is familiar with that model of BMW and was aware that the seatbelt in those vehicles is attached to the door jam.  Officer Lawrence observed that the buckle of the seatbelt was by the door jam and thus could not be on.  Officer

---

[1]At that time of the December 23rd attempted robbery, the BMW license plate tag was 9AC3060, which was the license plate observed by the victim.  Records from the Maryland Vehicle Administration indicate that the license plate for the BMW was subsequently changed to 5AE9468, which is the tag number written down by the citizen on the day of the Virginia bank robbery.  It was at all times the same car with the same VIN number and same registration, leading back to the defendant.

Lawrence activated his emergency lights and effected a traffic stop.  When Officer Lawrence

approached the BMW, the defendant asked why he had been stopped.  Officer Lawrence stated

that it was because the defendant was not wearing his seatbelt.  To which the defendant

responded "Oh."  At that time, Officer Lawrence asked the defendant for his driver's license and

registration.  The defendant provided a Maryland identification card instead.  At this time,

Officer Lawrence asked the defendant if he would step out of the vehicle.  The defendant agreed.

Sergeant Dave Blazer was behind Officer Lawrence's marked unit and was present at the

traffic stop.  Officer Lawrence asked the defendant to sit on the curb.  Sergeant Blazer did a

quick plain sight look at the defendant's car.  Law enforcement investigating the bank robbery

had emailed Sergeant Blazer surveillance photographs from the robbery, which Sergeant Blazer

viewed.  The surveillance photographs showed one of the robbers wearing white gloves.

Sergeant Blazer noticed a pair of white latex gloves and a cell phone in the console of the

defendant's car in plain view.  The gloves appeared similar to the gloves worn by one of the

robbers in the surveillance photographs.  Sergeant Blazer also noted that the robber brandishing

the gun appeared to have a build similar to that of the defendant (tall with a stocky build).  The

surveillance photographs also showed that this same armed robber had on gray tennis shoes that

resembled the gray New Balance tennis shoes that the defendant was wearing at the time.  Given

these facts, coupled with the fact that the defendant's car had been seen near the Virginia bank

prior to the robbery along with the defendant's suspected involvement in similar crimes,

Sergeant Blazer indicated that the defendant was under arrest and announced that to Officer

Lawrence.

The entire traffic stop lasted approximately ten minutes.  The defendant was transported

to the Prince George's County Criminal Investigations Robbery Unit.  Once taken into custody, the defendant's shoes as well as $802 was taken from his person.  Meanwhile, the BMW was impounded and towed.  The BMW was towed to Fairfax County.  That same day, a Fairfax County Magistrate issued two warrants for the defendant's arrest for the June 27th robbery (a warrant for each of the teller victims inside the bank).

### D.  Search Warrants

On June 28, 2011, Fairfax County Police Officer Avery Butzer swore out an affidavit in support of a warrant to search the defendant's 1998 BMW 740-IL.  The affidavit included a brief description of what occurred inside the bank as well as a description of the suspects.  The warrant was issued.  During the search of the vehicle, officers recovered a pair of black gloves from the trunk of the vehicle, a cellular telephone, and a rental agreement for a storage unit located in Hyattsville, Maryland.  According to the documents, the unit was leased by the defendant.

On June 29, 2011, Prince George's County Detective Serpas along with Fairfax County Police Officer Avery Butzer swore out an affidavit in support of a warrant to search the defendant's storage locker.  The affidavit was essentially the same as the affidavit submitted for the search of the BMW, except it noted the search of the BMW and the items recovered during the search.  The search warrant was issued.

On June 30, 2011, Officer Butzer swore out an affidavit in support of a warrant to search the cellular telephone recovered from the defendant's BMW.  The affidavit was essentially the same as the affidavit submitted for the search of the BMW.  The search warrant was issued.

On July 14, 2011, the Fairfax County Police Department swore out an affidavit in support

of a warrant to obtain a buccal swab from the defendant.  The affidavit included the same

description of the robbery and the robbers.  The requested search warrant was issued.

**ARGUMENT**

**I.      Law Enforcement Conducted a Lawful Traffic Stop Because the Police
         Officer Observed that the Defendant was Not Wearing His Seatbelt**.

The defendant argues that the officer stopped the defendant on a "suspected" seatbelt

violation and thus the stop was unwarranted.  Def. Mem. at p. 4.  The defendant then claims that

he was in fact wearing his seatbelt when the officer approached.  *Id.* at 2.  The defendant's

claims are patently false.

A decision to stop an automobile is reasonable where a police officer has probable cause

to believe a traffic violation has occurred.  *Whren v. United States,* 517 U.S. 806, 810 (1996)

(holding that officers may stop a vehicle on a minor traffic infraction even if the true motivation

for the stop is the belief that the vehicle's occupants were engaged in illegal activity).

Maryland law provides "[a] person may not operate a motor vehicle unless the person and each

occupant under 16 years old are restrained by a seat belt or a child safety seat. . . ."  MD CODE §

22-412.3(b).  Courts have routinely held that a seatbelt infraction provides probable cause to stop

a vehicle.  *United States v. Flauntleroy,* 800 F. Supp.2d 676, 687 (D. Md. 2011) (finding that

officer had probable cause to stop the vehicle where the driver was not wearing his seatbelt);

*United States v. Meggison,* 152 Fed. Appx. 275, 2005 WL 2500529, *1 (4th Cir. (2005)) (finding

that state trooper had probable cause to stop motorist who was not wearing a seat belt while

driving, an offense for which a driver could be stopped and issued a traffic citation under

Maryland law).

In this case, Officer Lawrence had probable to stop the defendant for not wearing his

7

seatbelt.  When Officer Lawrence began following the defendant, it was still daylight and Officer

Lawrence had a clear view inside the defendant's vehicle.  Officer Lawrence was familiar with

the defendant's older model BMW (1998 BMW) and knew that the seat belt was attached to the

door jam.  Lawrence also observed that the buckle of the seatbelt was near the door jam,

indicating that it could not have been fastened.  Contrary to the defendant's claims, the defendant

was not wearing his seatbelt when Officer Lawrence approached.  Despite the defendant's claims

in his motion, the determination to make the stop was based on Officer Lawrence's familiarity

with the vehicle and observations – not mere suspicion.

When police spot a traffic infraction, they are permitted to stop the car even if they are

using the infraction as an excuse to investigate other crimes.  *Whren,* 517 U.S. at 810; *United

States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008).  There is no doubt that law enforcement

officers were already closing in on the defendant and were motivated by the investigation of the

bank robbery.  After all, a witness had reported seeing the defendant's vehicle across from the

bank prior to the robbery and provided his license plate number.  Law enforcement was

surveilling his sister's house and another house where they believed the defendant resided, and

they were waiting for him to appear.  Sergeant Blazer had contacted Landover Hills District

Police Station requesting the assistance of a marked police cruiser if a stop was necessary.  As

the Supreme Court and the Fourth Circuit have held, that motivation is immaterial.

Once observed, a traffic violation provides a sufficient justification for a police officer to

detain the driver for as long as it takes to perform the traditional incidents of a routine traffic

stop.  *Branch*, 537 F.3d at 335.   The officer's justification for effecting the stop is limited in

scope and duration by the needs to (1) identify and issue a citation; and (2) to ensure officer

safety.  *Whren*, 517 U.S. 806; *Pennsylvania v. Mimms* 434 U.S. 106 (1977).  In this case, the

defendant failed to wear his seatbelt and then handed the officer a Maryland identification card,

not a driver's license.  Sergeant Blazer and another detective were already on scene and were

able to do a quick plain sight view of the defendant's car.  After this, the defendant was placed

under arrest, which took precedence over the traffic stop.

Given that the stop and its duration were proper, the defendant's motion should be

denied.

**II.     Officers had Probable Cause to Detain and Arrest the Defendant Because
the Gloves Seen in His Car, the Shoes he was Wearing, and His Body Type
Resembled Those Depicted in Surveillance Photographs from the Robbery,
and a Witness Placed His Car Across from the Bank Prior to the Robbery.**

The defendant's argument that the officers lacked probable cause to arrest him is also

flawed and should be rejected.

A warrantless arrest is permitted where there is probable cause to believe a felony has

been committed by the arrested individual, based upon "the totality-of-the-circumstances."

*Illinois v. Gates,* 462 U.S. 213 (1983).  "Probable cause 'to justify an arrest means facts and

circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or

one of reasonable caution, in believing, that the circumstances shown, that the suspect has

committed, is committing, or is about to commit an offense.'" *United States v. Williams* 10 F.3d

1070, 1073-74 (4th Cir. 1993).  The evidence needed to establish probable cause is more than a

mere suspicion but less than evidence sufficient to convict.  *Id.* at 1074.

In this case, Sergeant Blazer had probable cause to detain and arrest the defendant.

When Prince George's County Police were contacted regarding the Virginia bank robbery,

Sergeant Blazer immediately recognized the defendant's name.  The defendant was a suspect in

another pending armed robbery in Maryland. When Sergeant Blazer viewed the surveillance photographs from the robbery, he noticed that the robber holding the gun and the defendant had the same build. Sergeant Blazer also knew that the defendant's BMW had been seen at the bank prior to the robbery; a witness had documented the make (BMW), color (Blue), and Maryland license plate number. Sergeant Blazer also knew that the defendant's blue BMW was spotted at the attempted armed robbery for which the defendant was on bond. After arriving at the traffic stop, Sergeant Blazer also saw in plain view white gloves sticking out of the center console of the car and recalled that one of the robbers had also worn white gloves. Finally, Sergeant Blazer observed that the defendant was wearing gray New Balance tennis shoes that resembled the shoes worn by one of the robbers. Given the information known to law enforcement, the defendant's argument that there was not probable cause for his arrest is completely without merit.

The defendant claims he was immediately arrested as soon as he stepped out the car. That is wrong. He was arrested after Sergeant Blazer saw in plain view white gloves in the center console and noticed the similarity between the defendant's shoes and those of one of the robbers. The defendant's main attack on probable cause is that latex gloves were found in his car and one witness at the scene said that the robber was wearing cotton gloves. That discrepancy alone does not defeat the probable cause to arrest given the totality of circumstances. Considering that they had video of the robbery, officers relied on the surveillance footage from the robbery in making the assessment and not statements from witnesses inside the bank. It should also be noted that the same witness who described the gloves as cotton also stated that the robber wearing the white gloves was wearing a hoody –

10

which the surveillance video and photographs show is inaccurate.

Nonetheless, based on all the information, probable cause did exist to arrest the defendant.  Once under arrest, officers had authority to search the defendant incident to arrest, and seize the defendant's shoes and the cash on his person.  When conducted incident to a lawful custodial arrest, a full search of the arrestee's person is permitted.  *United States v. Murphy*, 552 F.3d 405, 410 (4th Cir. 2009) (denying motion to suppress and finding that cell phone was on motorist's person at time of his arrest, so as to permit seizure of phone incident to arrest).  The defendant's argument that his shoes were taken prior to the magistrate's issuance of the warrant is of no consequence.  The law allows for probable cause arrests with magistrates later issuing warrants.  In this case, the defendant was under arrest at the time Sergeant Blazer made his observations.[2]

Thus, the defendant's motion to suppress should be denied.

## III.    The Search Warrants Were Supported By Probable Cause.

The defendant argues that the affidavits in support of the search warrant for the BMW, the defendant's DNA, the storage facility, and his cellular phone did not amount to probable cause, but makes no attempt to explain how the information in the affidavits was insufficient. Def. Mem. at p. 6.   He is simply wrong.

When presented with a search warrant application, a magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place."

---

[2]Moreover, the shoes and cash would be subject to the inevitable discovery doctrine as these items would have been seized from the defendant prior to him being processed at the jail.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). In reviewing a probable cause determination, "great deference" must be accorded the magistrate's assessment of the facts. *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990) (citing *Spinelli v. United States*, 393 U.S. 410 (1969)). "[T]he task of a reviewing court is not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

Here, the information contained in Officer Butzer's affidavit provides a substantial factual basis to support the magistrate's determination that probable cause existed.[3] In pertinent part, the affidavit provided as follows:

> On June 27th, 2011 at 14:30 hours, the BB&T Bank located at 8416 Arlington Boulevard, Fairfax (Fairfax County), Virginia was robbed at gunpoint. Two adult black male suspects entered the bank; the first suspect to enter the bank was wearing a long-sleeved light colored shirt, jeans, a black baseball hat, a white mask, off-white plastic gloves, sunglasses, while carrying a blue bag over his shoulder; the second suspect to enter the bank was wearing a maroon colored hoodie, a black baseball hat, jeans, gray sneakers, black gloves, a white mask, while displaying a black handgun.

*Affidavit in Support of Search Warrant,* at p. 1. The affidavit also recounted that a citizen, who worked near the bank, approached the police indicating that he had information he believed to be related to the robbery:

> While looking out of his [the citizen's] office window, at approximately 13:00 hours, he noticed a blue four-door BMW 740-IL, bearing Maryland registration, 5AE9468 parked in a parking lot across from the bank. He stated that the vehicle caught his attention because there were two individuals, described as black males, sitting in the vehicle. The citizen recalled that he had observed the vehicle earlier

---

[3]Because the affidavits for the search of the defendant's BMW, cellular phone, DNA, and storage unit are essentially the same, the argument and analysis is the same for each. However, the citations in the section are to the Affidavit in Support of the Search of the BMW as it was sworn out first.

that morning at an unknown time, in the parking lot, and that once the robbery
had occurred, the vehicle was no longer parked in the parking lot.

*Id.*

The affidavit also explained how the vehicle registration returned to the defendant's sister
and that an FBI special agent assisting with the investigation immediately recognized the sister's
name, her relationship to the defendant, and that the defendant was known to be involved in a
previous robbery attempt of a check cashing store in Prince George's County.   Moreover, law
enforcement also knew that the same BMW was linked to the robbery.  In addition, the affidavit
explained that officers began conducting surveillance of the sister's house in the Landover Hills
area of Prince George's County.  Officers observed a black male arrive in the BMW, exit the
vehicle, and enter the residence.   Later, the same male exited the house and left in the BMW.
Police officers followed the vehicle, initiated the traffic stop, and identified the defendant.
Moreover, the officers observed the defendant wearing gray New Balance sneakers, which
appeared similar to those worn by one of the suspects observed in the bank surveillance video.
The affidavit indicated that the police officers observed, also in plain sight, a cell phone and off-
white plastic gloves in the center console.  The affidavit noted that the surveillance video showed
the other suspect wearing off-white plastic gloves during the robbery.

After reviewing the applications and affidavits, each magistrate who considered them
found that there was probable cause to search.  Those probable cause determinations were proper
given that: (1) the bank was robbed by two black males; (2) a citizen had observed the
defendant's car, with two black males sitting in it, parked across the street from the bank in the
morning preceding the robbery as well as about an hour prior to the robbery; (3) the vehicle
registration led to the defendant's sister; (4) law enforcement had information that the car was

13

actually owned by the defendant and was linked to a prior attempted robbery of a check cashing establishment; (5) the defendant was a suspect in the previous robbery attempt; (6) after initiating a traffic stop of the defendant the same day of a robbery, they observed off-white latex gloves that resembled the gloves one of the robbers was wearing in the surveillance footage; and (7) the defendant was wearing shoes that resembled those worn by the second robber.  Clearly, Officer Butzer's affidavit sets forth a sufficient factual basis supporting a finding of probable cause.

Thus, the defendant's suppression motion utterly fails to undermine the magistrate's probable cause finding and should be denied.

**IV.    Even if this Court Were to Now Find Probable Cause Lacking, the Defendant's Motion Should Be Denied Because the Officers Conducting the Search Relied in Good Faith on a Facially Valid Warrant.**

A review of the search warrant application in this case leaves no doubt that it was supported by probable cause.  But even if probable cause were found wanting, the evidence should not be suppressed pursuant to the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 913, 920 (1984).

In *Leon*, the Supreme Court held that evidence need not be suppressed when the police obtain evidence through objective good faith reliance on a facially valid warrant that is later found to lack probable cause.  468 U.S. at 913, 920.  This "good faith" exception to the exclusionary rule is proper because suppression in this situation would not further the deterrent function of the rule.  *Id.* at 918-20.  "[A] court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the

14

magistrate's authorization.'" *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) (*quoting Leon*, 468 U.S. at 922 n. 23).

> The Supreme Court has reiterated that:

> To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.

*Herring v. United States*, 129 S.Ct. 695, 702 (2009).

The Supreme Court has identified four situations in which police cannot be found to have acted with "objective reasonableness," and thus excluding application of *Leon*'s good faith exception: (1) when "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," (2) when "the issuing magistrate wholly abandoned his judicial role," (3) when the warrant was "so facially deficient–i.e., in failing to particularize the place to be searched or the things to be seized–that the executing officers cannot reasonably presume it to be valid," and (4) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923.

Here, the defendant claims the first exception applies because the magistrate was misled by information that the officer knew was false or would have known was false except for the officer's reckless disregard for the truth. Def. Mem. at p. 7. The defendant points to four specific facts that were mentioned: (1) the plastic gloves; (2) the New Balance sneakers; (3) the prior attempted robbery; and (4) the location of the car theft.

### A.      The Plastic Gloves

The defendant argues that the magistrate was misled by the police mentioning off-white plastic gloves resembling those seen on the surveillance given that one of the witnesses interviewed described the gloves worn as cotton gloves.  This difference between the officer's observation of the video and the witness' description does not reflect an intentionally false or reckless statement designed to mislead the magistrate.

Indeed, Officer Butzer will testify that she based her affidavit on her personal review of the bank surveillance tape and <u>not</u> on the witnesses' descriptions, and that she never spoke with that witness and was not aware of the witness' statement when she prepared her affidavits. Officer Butzer will also testify that in situations where video surveillance is available, officers will rely primarily on the surveillance because they know in stressful situations witnesses may not always have as good a recall as they normally would.  It was only after the defendant's motion was filed that Officer Butzer realized that there was a discrepancy regarding the gloves being plastic or cotton.  Moreover, Officer Butzer will testify that she later reviewed the notes and report of that witness' interview.  The same witness who described the gloves as cotton also stated that the robber wearing the white gloves was also wearing a hoody, a description that the surveillance video and photographs show is inaccurate.

Considering that Officer Butzer was neither aware of nor relied on the witness' description of the gloves– and also that the witness' description was inaccurate on another point, the defendant cannot establish that Officer Butzer provided information that she knew was false or would have known was false except for a reckless disregard for the truth.

**B.      The New Balance Shoes Do Resemble
Those in the Surveillance Video.**

The defendant also claims that the mention of the New Balance sneakers also misled the magistrate because it gave the impression that it "matched Mr. Cole's brand of shoes with those worn by the perpetrator." Def. Mem. at p. 8. The defendant is wrong. The affidavit does not identify the brand of shoes the robber was wearing. It merely states that he was wearing gray shoes. It goes on to note that the gray New Balance sneakers that the defendant was wearing at the time of his arrest resembled those seen in the robbery surveillance footage. That statement was true, accurate, and not misleading.

**C.      The Defendant's BMW was Linked
to a Prior Robbery Attempt.**

The defendant also asserts that the police misled the magistrate by saying the same BMW with tag numbers was linked to a prior attempted robbery. However, the defendant's BMW was linked to a prior attempted robbery of a check cashing store. That victim observed the suspects flee in a blue BMW and recorded the license plate number. The government notes at the time of the attempt, the defendant had a different license plate tag. *See infra, footnote 1.* Although it was a different tag, it was the same BMW, same VIN number, and same registered owner. Subsequent investigation revealed that the BMW was actually owned and operated by the defendant. The defendant was arrested but later released on bond. Although the affidavit did not note the change in the license plate tag, the reference to the tag number was just a small discrepancy at most. The information, however, is accurate: the defendant's car was linked to a prior attempted robbery.

17

### D.      A Prior Investigation Did Link the Defendant to
###            the Area Where the Getaway Car was Stolen.

Without providing any basis whatsoever, the defendant claims that the affidavit's

assertion linking the defendant to the area from which the getaway car was stolen is "inaccurate,

unsupported, and misleading."  Def. Mem. at p. 8.  The defendant is wrong.  The Plymouth,

which was used as the getaway vehicle in the Virginia bank robbery, was stolen from an area in

Northwest, Washington, D.C.  The FBI special agent who responded to the bank robbery was

aware of other investigations of the defendant, including the attempted robbery of the check

cashing place.  As part of those investigations, law enforcement learned that the defendant and

several of his associates spent time in a certain area of Northwest, Washington D.C.  Upon

hearing the location from which the Plymouth was stolen, the FBI special agent recognized the

location as being in close proximity to the area where the defendant was known to frequent.

Thus, this information was accurate and the defendant's motion should be denied.

## V.      The Defendant Fails to Establish that He is Entitled to a *Franks* Hearing.

The defendant must "make a substantial preliminary showing that a false statement

knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant

in the warrant affidavit" before he is even entitled to a hearing on this claim.  *Franks v.*

*Delaware*, 438 U.S. 154, 155-56 (1978).  This burden is a heavy one.  *United States v. Jeffus*, 22

F.3d 554, 558 (1994).  As stated in *Franks,*

> To mandate an evidentiary hearing, the challenger's attack must be more than
> conclusory and must be supported by more than a mere desire to cross examine.
> There must be allegations of deliberate falsehood or of reckless disregard for the
> truth, and those allegations must be accompanied by an offer of proof . . . . they
> should be accompanied by a statement of supporting reasons.  Affidavits or sworn
> or otherwise reliable statements of witnesses should be furnished, or their absence
> satisfactorily explained.

18

438 U.S. at 171.

The defendant has not and cannot make this preliminary showing.  For all of the reasons previously discussed in section IV, the information contained in the affidavits was not false.

The defendant claims that the affiant misled the magistrates by not including the information that two black males had been seen in an SUV prior to the robbery and one had a painter's mask around his neck. This argument also fails.  The *Franks* threshold is even higher for defendants making claims of omission rather than affirmative false statements.  *United States v. Clenney*, 631 F.3d 658, 664 (4th Cir. 2011).

It is not enough to merely identify factual omissions; the defendant must show that the omissions were "designed to mislead, or ... made in reckless disregard of whether they would mislead " and that the omissions were material, meaning that their "inclusion in the affidavit would defeat probable cause." *Id.* (*citing United States v. Colkley*, 899 F.2d 297, 301 (4th Cir.1990)).  Thus, to successfully attack an affidavit based on omitted information, the defendant must show: (1) that the omission is the product of a deliberate falsehood or a reckless disregard for the truth, and that (2) the inclusion of the omitted information in the affidavit would have defeated probable cause.  *Colkley*, 899 at 301-02.

This defendant does not and cannot meet either prong of the test.  The information was not excluded because of deliberate falsehood or reckless disregard for the truth.  The reporting witness was unsure of the make and model of the vehicle (although he thought it could have been a Dodge SUV) and did not get the license tag number.  Like the defendant's BMW, the Dodge SUV also had Maryland tags.  The evidence indicated that the defendant and one of his accomplices were using the defendant's BMW to surveil the bank.  His car was seen in the

19

morning hours and also at 1:00 p.m. – one hour before the robbery.  Law enforcement surmised that the defendant and his accomplice could have been using this second vehicle for surveillance as well.  However, without being able to follow up on the lead, the information was inconclusive.  Thus, the information was not included in the affidavit.  This information, however, does not exculpate the defendant, and inclusion of the information would not have defeated probable cause.

Even if the Court viewed the information as exculpatory, the defendant's request for a *Franks* hearing should still be denied.  The Fourth Circuit has held that all known exculpatory information need not be included in an affidavit, and omission of information is less likely to require a *Franks* hearing than is the knowing inclusion of false information. *Colkley*, 899 F.2d at 301-02.  Simply put, "[t]he protections of *Brady v. Maryland* do not apply to warrant application proceedings." *Clenney*, 631 F.3d at 665 (internal citation omitted).  Thus, the defendant's request for a *Franks* hearing should be denied.

## CONCLUSION

For these reasons, the defendant's motion to suppress and request for a *Franks* hearing should be denied.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:  _____/s/_____
Patricia T. Giles, Esq.
Virginia Bar No.: 43257
Rebecca H. Bellows
Attorney for the United States of America
United States Attorney's Office

Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  703-299-3700
Fax: 703-299-3982
Email Address: Patricia.Giles@usdoj.gov
Email Address: Becky.Bellows@usdoj.gov

21

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of January 2012, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:


Jonathan Simms
Counsel for defendant William Louis Cole, Jr.


_____/s/_____
Patricia T. Giles, Esq.
Virginia Bar No.: 43257
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  703-299-3700
Fax: 703-299-3982
Email Address: Patricia.Giles@usdoj.gov